UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JOHNNY DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-184-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Johnny Davis filed a pro se civil complaint under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2672, *et seq.*, and the Court granted him permission to proceed *in forma pauperis*, R. 4. While initially screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court recognized that a question existed as to its jurisdiction. *See* R. 6. Even when the parties have not raised the issue, courts "have an independent obligation to determine subject matter jurisdiction." *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 423 n.5 (6th Cir. 2007). Because the Court was concerned about the basis for its jurisdiction, it issued an Order allowing the action to proceed for the limited purpose of determining whether it had jurisdiction to hear the matter. *See* R. 6.[1] The Plaintiff filed a Response to the Court's Order, in which he provided an answer to the Court's question regarding jurisdiction and provided additional facts.

---

[1]Because the Court thoroughly recounted the factual background in its November 7, 2008, Memorandum Opinion and Order, R. 6, if will not repeat those facts here.

1

R. 11.  For its part, the United States filed a Motion to Dismiss, arguing that the Court does not

in fact have jurisdiction to hear this claim because it is untimely and alleges liability on the part

of individuals who are not government employees.  *See* R. 10.  Specifically, the United States

argues that the claim accrued, at latest, on July 28, 2005, which is well outside the two-year

statute of limitations period.  *See* R. 10 at 6–7.  The Government also argues that the Court lacks

jurisdiction because the claim was filed after September 5, 2008, more than six months after the

March 5, 2008, administrative denial.  *See id.* at 11.  Finally, the Government argues that the

named doctors are independent contractors—not government employees—for whose negligence

the United States cannot be held liable under the FTCA.  *See id.* at 8–10.  Plaintiff filed a

Response to Defendant's Motion.  R. 15.  Based on the documents filed by the parties, Davis has

complied with the statute of limitations, and there is no evidence that the named doctors are

independent contractors.  Therefore, the motion to dismiss is denied.

### THE STATUTE OF LIMITATIONS UNDER THE FEDERAL TORT CLAIMS ACT

The FTCA provides a limited waiver of the United States' sovereign immunity and allows

tort claims against the United States "in the same manner and to the same extent as a private

individual under like circumstances . . . ." 28 U.S.C. § 2674 (1994); *see also Young v. United*

*States,* 71 F.3d 1238, 1241 (6th Cir. 1995) ("The Act 'waives sovereign immunity to the extent

that state-law would impose liability on a private individual in similar circumstances.'" (quoting

*Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994))).  The FTCA contains a strict statute

of limitations that bars suit unless a claim is presented to the appropriate federal agency within

two years of its accrual and an action is commenced within six months of the agency's denial of

the claim.  *See* 28 U.S.C. § 2401(b).  The Government argues that these requirements are jurisdictional, and therefore not capable of waiver or subject to estoppel, *see* R. 10 at 5.  To be sure, the Sixth Circuit has found the statute of limitations to be jurisdictional.  *See, e.g., Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 332 (6th Cir. 2008); *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1980) (per curiam).  However, the Sixth Circuit has also indicated otherwise.  *See Hogan v. United States*, 42 F. App'x 717, 722 (6th Cir. 2002); *Glarner v. United States Dep't of Veterans Admin.*, 30 F.3d 697, 701 (6th Cir. 1994).  For the purposes of this case, though, it does not matter whether the statute of limitations is jurisdictional because Davis has complied with it in any event.

## A. Davis Asserted his Claim within Two Years of its Accrual

Though state law determines *whether* any claim accrues against the government on a negligence claim, federal law determines *when* a claim accrues within the meaning of the two-year limitations period.  *Chomic v. United States*, 377 F.3d 607, 610 (6th Cir. 2004).  A cause of action in a medical malpractice case accrues and the statute of limitations begins to run under the FTCA when the plaintiff knows of both his injury and its cause.  *Robinson v. United States Dep't of the Army*, 48 F. App'x 970, 971 (6th Cir. 2002)[2]; *see also Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983) ("The [two-year statute of limitations] does not begin to accrue until the plaintiff has 'knowledge of the factual predicate for a malpractice claim, i.e. the fact of his injury [and] its cause.'" (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir.

---

[2]Unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).  Accordingly, the Court considers such decisions for their persuasive value only.  *See id.*

1980))); *Stoleson v. United States*, 629 F.2d 1265, 1268 (7th Cir. 1980) ("In medical malpractice cases . . . the statute of limitations does not begin to run until after the patient discovers or in the exercise of reasonable diligence should discover his injury and its cause."); *cf. United States v. Kubrick*, 444 U.S. 111, 121–23 (1979) (stating, in dicta, that the time begins to accrue once the plaintiff is aware of the cause of his injury). This is because:

> a patient often has little or no reason to believe his legal rights have been invaded simply because some misfortune followed medical treatment. Sometimes a patient may remain unaware for many years that he has suffered injury or he may recognize his injury but not its cause. Indeed, the facts necessary to discover the causal relation between treatment and injury may be within the exclusive control of the physician or at least very difficult to obtain.

*Stoleson*, 629 F.2d at 1268. Thus, "[t]he plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the treatment and injury." *Harrison*, 708 F.2d at 1027. Based on the available evidence, it appears that Davis did not learn the cause of his injury—and therefore, his claim did not accrue—until October 18, 2006, which means that his claim was asserted well within the two-year limitations period.

Davis has presented evidence relevant to this inquiry in two different responses. The first, R. 11, was filed in response to the court's order of November 7, 2009, R. 6, and the second, R. 15, was filed in response to the defendant's motion to dismiss, R.10. Davis signed each response and attested under the penalty of perjury that all the information contained within them was true and accurate to the best of his knowledge. *See* R. 11 at 6; R. 15, Mem. at 10. These

4

verified documents are given the same weight as affidavits. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). These responses and Davis's medical records show that he neither knew nor should have known of his injury and its cause prior to October 18, 2006.

First, Davis testifies that his treating physicians repeatedly told him that he could expect severe pain in his surgical eye during the healing process. R. 15, Mem. at 4. They apparently also told him that because of his age, he could anticipate a longer healing process than a younger person. *Id.* Davis explains that one of the physicians even consoled him by recounting her mother's experience with similar problems after cataract surgery and assuring him that her mother eventually regained perfect vision. Based on the statements of his physicians, Davis claims that he thought his pain was normal given his condition, and it was only on October 18, 2006, when Dr. Todd Diffenbaugh ("Dr. Todd") told him that it was due to improper post-surgical care that he knew both his injury and its cause. Under these circumstances, a reasonable person would not have had cause to suspect that they had been injured by a medical mistake until October 18, 2006.

This conclusion is supported by Davis's medical records, which—until October 18, 2006—are completely silent on the cause of his injuries. It is true that, at one point, the records contain the notation "Displaced IOL." R. 2, Exh. D. However, this kind of notation is precisely why a claim does not accrue until the facts are such that the plaintiff or a reasonable person in the plaintiff's place would know both his injury and its cause. It is completely reasonable that Davis would not have known that a displaced IOL could have been caused by a failed surgery

5

or lack of after-care rather than his original condition. *See Stoleson*, 629 F.2d at 1268 (indicating that a would-be plaintiff has little or no reason to suspect that malpractice occurred simply because some misfortune followed medical treatment). Therefore, this entry would not have given Davis reason to know both his injury and its cause. In contrast, the October 18, 2006, entry clearly indicates the cause of Davis's injuries. *See* R. 2, Exh. F. This entry includes the statement: "Symptomatic in both eyes at this point. This is due to a delay in initial follow-up treatment. Problems have compounded. Treatment will take time." *Id.* This notation is the first piece of information that would have permitted a reasonable person to know of both the injury and its cause, and in fact, that is the point at which Davis claims to have become aware of both the injury and cause.

Additionally, none of the other facts presented show that Davis had reason to know of his injury and its cause before October 18, 2006. Davis indicates that he got the information, names, dates, etc., in his complaint from his records, but that his initial efforts to get these records were impeded by his incarceration in a maximum security facility which was often under lock-down. *See* R. 15 at 4–5. The United States argues that he had to be aware of the cause of his injury in 2005 because he listed specific dates and names and thoroughly described his pain and injury, *see* R. 10 at 7, but it does not follow that his knowledge of his injuries and treatment necessarily means that he had knowledge of the cause of his injuries—especially since the medical records prior to October 18, 2006 recount these other facts but not the cause of his injury, *see* R. 11, Exh. H-L.

The contents of the records also indicate that Davis acted as a reasonable person

concerned with his health would have in this situation. *See Stoleson*, 629 F.2d at 1268 (starting the clock when "the patient discovers or in the exercise of reasonable diligence should discover his injury and its cause."). On many of his files, there is a notation that he has requested copies of his medical records. *See, e.g.,* R. 11, Exh. H at 15, Exh. I at 30. As an incarcerated individual with little access to the outside world, including alternative opinions as to his injury, he did all that he could have done to ensure that the care he had received was adequate—i.e, he relied on his doctors and regularly reviewed his medical records. As discussed above, until October 18, 2006, his diligence got him nowhere.

Finally, while the United States argues that Davis should have known the cause of his injuries simply because of their intensity and duration, it has submitted no evidence supporting this contention. The United States is correct to point out that a plaintiff has an obligation to follow-up on a suspicion of malpractice and seek a second opinion when a reasonable person in the same circumstances would do so. But, a reasonable person would not presume that his injuries were caused by malpractice simply because his condition did not improve, especially when his doctors repeatedly assured him that his symptoms were a normal result of the healing process. *See Stoleson*, 629 F.2d at 1268 ("[A] patient often has little or no reason to believe his legal rights have been invaded simply because some misfortune followed medical treatment."). The position advocated by the United States would require anyone suffering from a serious injury requiring multiple procedures and causing severe pain to either file suit based on speculation and presumption alone or wait for information which might actually lead them to affirmatively know the cause of their injuries, but in doing so risk having their claims forever

barred by the statute of limitations.  Prisoners already file numerous suits against the United States, and putting them in this position would clearly encourage more premature suits, a situation that is neither desirable nor intended by the limited waiver of sovereign immunity in the FTCA.  Thus, the two-year statute of limitations period under the FTCA did not start to run until Davis discovered the cause of his injury on October 18, 2006.  And because he filed suit in September of 2008, he complied with the two-year statute of limitations.

### B. Davis Filed this Lawsuit Within Six Months of the Agency's Denial of his Claim

Davis has also complied with the second half of the statute of limitations—i.e., the requirement of filing a lawsuit within six months of the date on which the administrative agency denied his claim.  *See* 28 U.S.C. § 2401(b).  A prisoner's filing is deemed submitted on the day on which he submits it to the proper prison officials.  *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988).  Here, Davis's administrative remedy was denied on March 5, 2008, R. 2, Exh. C. Therefore, he was required to file suit on or before September 5, 2008.  The initial documents were unclear as to whether Davis submitted his Complaint to the appropriate prison officials before the September 5, 2008, deadline, *see* R. 6, but he has since presented evidence confirming that he timely submitted his Complaint to them on September 2, 2008, *see* R. 11.

First, he has more clearly recounted the facts surrounding his filing in his verified response.  *See* R. 11 at 4.  He testifies that he "surrendered the document to Correctional Officer A. Clark in a large legal size envelope bearing Article Number 7005-3110-0003-8092-6458 Certified Mail Receipt attached with all postage prepaid on September 2, 2008."  R. 11 at 4.  He recounts that the details surrounding his filing were memorable, in particular, because the facility

8

was on "lockdown" that day and he had to pass certain exhibits to Correctional Officer Clark so that he could staple them.  *Id.*  Second, he has submitted the Inmate Request to Staff which confirms this chain of events, includes a the statement in the disposition area "I put in office for mail," and appears to contain the signature of Correctional Officer Clark.  *See* R. 11, Exh. J. Third, he submitted his certified mail receipt.  *See id.*  Finally, he submitted the Affidavit of Rayfield Davis, a prisoner in a nearby cell, which recounts a conversation between Correctional Officer Clark and Plaintiff Davis and confirms that Davis submitted the document on September 2, 2008.  *See* R. 11, Exh. K.  The United States has submitted no evidence to the contrary.  Thus, the evidence in the record supports the conclusion that Davis filed his Complaint on September 2, 2008.  Therefore, the available evidence indicates that Davis has complied with the FTCA statute of limitations.

### CLAIMS ARISING FROM THE CONDUCT OF DRS. TODD AND FRY

Aside from the statute of limitations issue, the United States has also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that FTCA suits cannot be maintained for the negligent conduct of Drs. Fry and Todd since they are independent contractors.  *See* R. 10 at 8–10.  At this time, however, the Court cannot dismiss the case on this basis because there is no evidence that Drs. Fry & Todd were independent contractors.

The FTCA contains a limited waiver of the United States' sovereign immunity, but only for injuries resulting from the conduct of employees of the United States.  *See* 28 U.S.C. § 1346(b); *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).  It does not authorize suits against the Unites States based on the acts of independent contractors.  *See* 28 U.S.C. § 2671;

9

*United States v. Orleans*, 425 U.S. 807, 814 (1976); *Logue v. United States*, 412 U.S. 521, 527 (1973). "In determining whether an individual is a federal employee or an independent contractor, the critical question is whether the federal government has the power to control the detailed performance of the individual." *Duplan v. Harper*, 188 F.3d 1195, 1200 (10th Cir. 1999) (citing *Lilly v. Fieldstone*, 876 F.2d 857, 858 (10th Cir. 1989)); *see also Orleans*, 425 U.S. at 814 (quoting *Logue*, 412 U.S. at 528). Courts have generally applied these principles to private physicians working under contractual relationships with government owned facilities to conclude that these physicians are independent contractors, not government employees. *See, e.g.*, *Tsosie v. United States*, 452 F.3d 1161, 1163-64 (10th Cir. 2006); *Jones v. United States*, 305 F. Supp. 2d 1200, 1205-07 (D. Kan. 2004); *Robb*, 80 F.3d at 888–94; *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1264-68 (S.D. Fla. 2001).

In all likelihood Drs. Fry and Todd are independent contractors for which the United States is not liable, but, the United States has submitted no evidence confirming this fact. Extensive evidence is not required. In fact, other courts have accepted as little as the contract itself as sufficient evidence that physicians working under contractual relationships with government facilities were independent contractors. *See e.g.*, *Boyd v. United States*, No. 3:CV-05-2033, 2006 WL 2828843 (M.D. Pa. Sept. 29, 2006); *see also Wood v. Standard Prods. Co.*, 671 F.2d 825, 829 (4th Cir. 1982) ("[T]he contract and its terms in fixing the relationship of the offending party are critical."). Nevertheless, some evidence is needed before the Court can dismiss the claims of Davis as seeking redress for the conduct of independent contractors.

CLAIMS ARISING FROM THE CONDUCT OF OTHER PRISON EMPLOYEES

Even if the United States cannot be held liable for the conduct of Drs. Fry and Todd, it may still be liable for the conduct of other prison employees. While Davis expressly blames Drs. Todd and Fry for his injuries, he also claims that other prison employees acted negligently and caused him injury. *See* R. 11 at 2; R. 15 at 7–9. Specifically, he claims that certain prison employees/officials failed to provide him proper care because they defied the surgeon's orders both as to his location for recovery and as to his medications and supervision at the prison, *see* R. 10, Exh. B at 2, delayed medical treatment, R. 15 at 8, caused him to miss scheduled appointments, *id.*, failed to follow the doctors' orders and recommendations as to his treatment and examination by specialists, *id.*, delayed sending him to Dr. Todd when he was symptomatic, R. 11 at 2, and failed to follow BOP policy, *id.* Finally, he alleges these employees were negligent because they caused him to believe that his symptoms were the normal result of his treatment and condition instead of the result of improper treatment. R. 11 at 3.

Prior to bringing an FTCA claim in federal court, a claimant must give notice of the claim to the appropriate agency. *See* 28 U.S.C. § 2675. "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011-12 (7th Cir. 1991)). In order to be sufficient, the written notice must enable the agency to investigate the claim, *see Glarner*, 30 F.3d at 700, because "the purpose of the notice requirement is to give federal agencies the opportunity to evaluate claims

11

and to settle them before they evolve into federal lawsuits," *Boyd*, 2006 WL 2828843, at *4.

The claim that Davis filed in pursuit of his administrative remedy sufficiently put the United States on notice of his claims arising out of the conduct of the named doctors and the other prison officials. In the "Claim for Damages, Injury or Death" that he submitted to the BOP, Davis alleged that the prison officials "totally defied [the] surgeon's instructions" and that they placed him in "administrative segregation without any regard to post-op instruction." R. 10, Exh. B at 3–4. He further explained, "no pain medication was administered as required per instructions, no medical assistance [was given], and claimant was not accompan[ied] by an adult and was placed in administrative segregation . . . ." *Id.* at 4. In addition to causing his current complications, he alleged that because the prison officials failed to follow the instructions he fell and hit his head on metal railing and was knocked unconscious while getting out of bed to activate duress button. *Id.* Davis also elaborated on the prison officials' subsequent failures to follow the instructions of his physicians and to provide him adequate medical care. *See id.* at 5–7.

Although in his Claim Davis expressly blamed his treating physicians for his injuries, as discussed in detail above, he also claimed that other individuals at the prison were responsible for his injuries. *See* R. 10, Exh. B. He has reiterated these claims throughout this case. *See generally* R. 11; R. 15. Clearly, the conduct he alleges could have contributed to his injuries, and in fact, Davis has submitted evidence that Dr. Todd concluded that Davis's current condition was caused by a delay in his post-surgical care. *See* R. 15 at 8 (quoting October 18, 2006, medical record). Accordingly, his allegations were sufficient to put the United States on notice

12

that he was seeking redress for injuries he claimed were caused by the doctors and also for injuries he claimed were caused by the conduct of other prison employees/officials.  Since he clearly notified the United States of the extent of his claim from the outset, the fact that he may be unable to proceed against Drs. Fry and Todd is not fatal to the remainder of his claim.

CONCLUSION

Accordingly, it is **ORDERED** as follows:

1)      Defendant's Motion to Dismiss, R. 10, is **DENIED WITHOUT PREJUDICE**. The United States may file another motion to dismiss if it has evidence indicating that Drs. Fry and Todd were independent contractors rather than government employees.

This the 13th day of May, 2009.



**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**