UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JOHNNY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-184-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| UNITED STATES OF AMERICA, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Johnny Davis, is an inmate at the United States Penitentiary, Big Sandy ("USP Big Sandy"), in Inez, Kentucky. In September 2008, the plaintiff filed a claim in this Court under the Federal Tort Claims Act ("FTCA") arising out of complications following surgery to correct a cataract in his left eye. R. 2. Now before the Court are cross-motions for summary judgment filed by the plaintiff, R. 39, and the defendant the United States of America. R. 45. The matter was referred to Magistrate Judge Edward B. Atkins. R. 17. On June 25, 2010, Judge Atkins issued a Report and Recommendation ("R&R") recommending that the plaintiff's motion be denied and the defendant's motion be granted. R. 50. The plaintiff filed objections to Judge Atkins's R&R on July 19, 2010, R. 51, and the defendant responded. R. 52. For the reasons provided below, the Court overrules Davis's objections and adopts Judge Atkins's recommended disposition. *See* Fed. R. Civ. P. 72(b)(3).

**BACKGROUND**

The sole issue at this stage of the proceedings is whether the plaintiff has provided

sufficient evidence to establish that the alleged negligence of USP Big Sandy employees caused his injuries. Under Kentucky law, which provides the governing standard, the plaintiff is required to introduce expert evidence to establish the causal connection. He has not. Therefore, the plaintiff has failed to provide sufficient evidence to survive the defendant's motion for summary judgment.

Because Judge Atkins's R&R contains a detailed review of the facts and procedural history of this case, the Court provides only a brief summary here.

In February 2005, the USP Big Sandy Review Committee approved the plaintiff for cataract eye surgery based on the recommendations of two contract doctors, Russell Fry and Todd Diffenbaugh. R. 2 ¶ 4e. Dr. Fry performed the cataract surgery on June 27, 2005, in Huntington, West Virginia. *Id.* ¶ 4f. According to Dr. Richard Ramirez, a Regional Medical Director for the Federal Bureau of Prisons, and the Acting Clinical Director for USP Big Sandy: "A cataract is a condition of the eye in which the eye's natural crystalline lens becomes clouded and impairs vision." R. 45 ("Ramirez Decl.") ¶ 5. Dr. Fry removed the cataract and implanted a clear plastic intraocular lens ("IOL") in the plaintiff's left eye. *Id.* ¶¶ 3, 5. After the surgery, Dr. Fry provided post-operative instructions for the plaintiff, including directions that he refrain from rubbing his eye, be accompanied by a responsible adult for 24 hours, and take one or two Tylenol tablets every four hours for discomfort. R. 45, Ex. B.

The plaintiff returned to USP Big Sandy immediately after his surgery and was placed under 24-hour supervision in Administrative Detention in the Special Housing Unit ("SHU"). Ramirez Decl. ¶ 12. That night, the plaintiff claims that he suffered extreme pain but was not

provided with Tylenol. He eventually became dizzy and fell, knocking himself unconscious. R. 2 ¶¶ H-I. The plaintiff returned to Dr. Fry the next day. Dr. Fry found that the plaintiff's IOL was displaced but did not immediately perform any follow-up surgery. *Id.* ¶ J. According to Dr. Ramirez, a displaced IOL is a rare complication of cataract surgery. Ramirez Decl. ¶ 8. Between July 1, 2005, and July 12, 2005, the plaintiff complained of pain and blurred vision in his left eye to prison staff. R. 1 ¶¶ K, L. On July 13, 2005, Dr. Diffenbaugh examined the plaintiff, diagnosed him with a displaced IOL, and recommended that he see a vitreal specialist as soon as possible. R. 45, Ex. C. Dr. Diffenbaugh's notes from the examination include a notation that: "Dr. [Fry] that did the Cat[aract] extraction noted condition and prescribed steroid. Did not do any follow-up." *Id.* The plaintiff returned to Dr. Fry on July 14, 2005, and Dr. Fry scheduled a follow-up surgery. Ramirez Decl. ¶ 14. Dr. Fry performed the follow-up surgery, an anterior vitrectomy, on July 27, 2005. *Id.* ¶ 15. Dr. Fry did not replace the plaintiff's IOL. *Id.* Dr. Fry performed "minor" follow-up laser surgery the next day. R. 2 ¶ Q.

The plaintiff claims that his eye problems only got worse. *Id.* ¶ R. On August 17, 2005, Dr. Diffenbaugh examined the plaintiff and recommended that he be sent to a different doctor, preferably at the University of Kentucky. R. 45, Ex. F. Dr. Diffenbaugh noted in the plaintiff's medical file that he was unsure why Dr. Fry had not replaced the IOL in the plaintiff's left eye. *Id.* The plaintiff claims that he is currently suffering from chronic eye pain, excessive tearing, blurred vision, headaches, and extreme photophobia. R. 2 ¶ W. In the record of an examination conducted on October 18, 2006—more than a year after the surgery—Dr. Diffenbaugh included a notation that "a delay in initial follow-up treatment" caused the plaintiff's symptoms. R. 2, Ex.

3

F.

Following exhaustion of his administrative remedies with the Bureau of Prisons, the plaintiff filed a complaint in this Court under the FTCA in September 2008. R. 2. In a previous order, the Court dismissed all defendants other than the United States of America from the case. R. 6. The Court also granted the defendant's motion for summary judgment as to all claims relating to the conduct of Drs. Fry and Diffenbaugh because the doctors are independent contractors and the FTCA does not permit recovery against the United States for the actions of independent contractors. *See* R. 33 & 35. Therefore, the plaintiff's remaining claims are limited to the conduct of prison employees, including their alleged failure to follow Dr. Fry's post-surgical instructions and to provide the plaintiff with adequate post-surgical care. *See* R. 50 at 7.

## DISCUSSION

The Court must review the plaintiff's objections to Judge Atkins's recommended disposition de novo. Fed. R. Civ. P. 72(b)(3). As noted, the only claims left in this case concern whether USP Big Sandy employees caused the plaintiff's injuries by failing to properly follow Dr. Fry's post-surgical instructions and failing to provide the plaintiff with adequate care after his surgery, including taking him to necessary follow-up medical appointments. R. 50 at 7. Judge Atkins recommended that the defendant's motion for summary judgment be granted because the plaintiff failed to provide any expert testimony showing that the actions of Big Sandy employees fell below the applicable standard of care or caused any of the plaintiff's injuries, including the displacement of his IOL. R. 50 at 6-7. For the reasons set forth below, the Court

4

agrees with Judge Atkins's recommended disposition.

I.      **Timeliness of the Plaintiff's Objections to Judge Atkins's R&R**

As an initial matter, the Court must determine whether the plaintiff's objections to Judge Atkins's R&R were timely. The defendant argues that the plaintiff filed his objections late and therefore waived his right to object. R. 52 at 1. The defendant is incorrect; the plaintiff was not late. Under Rule 72(b)(2) of the Federal Rules of Civil Procedure, the plaintiff was required to file his objections to Judge Atkins's R&R within 14 days of being served with a copy. Judge Atkins entered his R&R on June 25, 2010. R. 50 at 9. On the same day, a copy was mailed to the plaintiff, who is still in prison. The Federal Rules generally recognize that it takes three days for documents served by mail to arrive. *See* Fed. R. Civ. P. 6(d). Therefore, it can be assumed that the plaintiff received a copy of the R&R on June 28, 2010. The plaintiff then had until July 12, 2010, to file his objections. Although the plaintiff's objections were not filed with the Clerk of this Court until July 19, 2010, that is not the relevant date. Under the "prison mailbox rule," pleadings from a pro se prisoner are deemed to be filed when they are handed over to prison officials for mailing to the Court. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). In the Sixth Circuit, there is a presumption that a prisoner hands over a pleading to prison officials on the date that he signs the pleading. *Id.* In this case, the plaintiff signed his objections to Judge Atkins's R&R on July 12, 2010. Absent evidence to the contrary, it is presumed that he also handed the objections over to prison officials on July 12, 2010, and the objections are deemed to be filed as of that date. Therefore, the plaintiff's objections to Judge Atkins's R&R were timely.

## II. Magistrate Judge Atkins's R&R

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Judge Atkins recommended that the Court enter summary judgment in favor of the defendant. R. 50. The Court agrees.

Although the plaintiff brings his claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), in reality this case is all about Kentucky law. That is because the FTCA conditions the United States' liability for the torts of its employees on the law of the state where the tort occurs. The Act waives sovereign immunity and provides that the United States will be liable for injuries caused by the tortuous conduct of its employees only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Here, the alleged negligence took place at USP Big Sandy in Inez, Kentucky. Therefore, the Court must apply Kentucky negligence law. *See Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957); *Vance by and through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). As Judge Atkins explains, Kentucky law requires the four traditional elements of negligence: duty, breach, causation, and injury. R. 50 at 6. But in medical negligence cases, Kentucky law also generally requires that

plaintiffs provide expert testimony to establish (1) the standard of care that a reasonably competent medical practitioner would exercise, and (2) that the alleged negligence caused the plaintiff's injury. *See id.*; *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006).

The defendant argues, R. 45, Attach. 2, at 20, and Judge Atkins agrees, R. 50 at 6, that Kentucky law requires the plaintiff to introduce expert evidence to show (1) that the actions of USP Big Sandy prison officials fell below the applicable standard of care, and (2) that their negligence caused the plaintiff's injuries. While this may be the standard under Kentucky law for claims against the physicians and the providers of medical services, it is not clear that the expert requirement applies with the same force under the facts of this case. To state it simply, there are no doctors left in this case. The Court dismissed the plaintiff's claims relating to the conduct of Drs. Fry and Diffenbaugh. *See* R. 33 & 35. The plaintiff's remaining claims are limited to the conduct of the prison employees charged with supervising and caring for the plaintiff after his surgery.

While it may be difficult for a layperson to ascertain the standard of care that should apply to a physician or a medical professional, prison employees occupy a realm that is far less enigmatic. Do prison officials owe prisoners a duty to follow the post-surgical instructions of a prisoner's doctor? Would a reasonable and prudent prison guard withhold Tylenol from a prisoner who just underwent surgery? Lay jurors can more easily answer these questions than those that are usually posed in medical malpractice cases: How would a reasonable and prudent doctor perform complicated cataract surgery? Would a reasonable and prudent doctor have replaced the plaintiff's IOL, given the extent of the damage and the possible medical risks of the

7

procedure? Lay jurors simply cannot know the answers to these questions. Under Kentucky law, experts are required. *See, e.g.*, *Andrew*, 203 S.W.3d at 170 (expert testimony required to establish standard of care for doctor performing range of motion exam because layperson would not know proper way to conduct exam on person with plaintiff's spinal condition and pre-existing injuries). But lay jurors would have no such difficulty ascertaining the standard of care that applies to the conduct of the non-physician USP Big Sandy employees in this case. *See Rowan County v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) ("the law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody . . . .") (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940)). To the extent the plaintiff's claims are based on the actions of prison medical staff, Kentucky law may still require expert evidence to establish the applicable standard of care. But the lion's share of the plaintiff's allegations concern the actions of regular prison staff. As to them, Kentucky law would likely not require the plaintiff to provide expert evidence to establish the applicable standard of care.

But this is not enough to save the plaintiff's case. Kentucky law requires expert evidence to establish that the alleged negligence of the prison employees caused the plaintiff's injuries unless "causation is so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965); *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963). In this case, there are crucial links in the chain between the alleged negligence of the prison employees (failing to provide the plaintiff with Tylenol and placing him in administrative detention) and the plaintiff's injuries (a displaced IOL and other ocular complications)—links that are not intuitive to a layperson. Therefore, to survive summary

8

judgment under Kentucky law, the plaintiff must introduce expert evidence establishing that the alleged negligence of the prison employees caused his injuries.

In his filings with the Court, the plaintiff has introduced only one piece of expert evidence—the notation by Dr. Diffenbaugh in the plaintiff's medical records that his injuries were "due to a delay [in] initial follow-up treatment." R. 2, Ex. F. For the reasons given by Judge Atkins, R. 50 at 7-8, this is not enough. Dr. Diffenbaugh's single notation in the plaintiff's medical records does not state that the actions of USP Big Sandy employees caused the plaintiff's injuries. How could it? The facts demonstrate that prison officials brought the plaintiff to follow-up medical appointments without delay. They took the plaintiff to Dr. Fry the *very next day* after his surgery and to four additional appointments over the next month. *See* R. 50 at 2-4. At most, Dr. Diffenbaugh's notation could demonstrate the negligence of Dr. Fry. Dr. Fry examined the plaintiff the day after his surgery, noted that his IOL appeared to be displaced, but did not replace it. It was Dr. Fry who decided not to provide the plaintiff with follow-up treatment immediately, but to wait several weeks before performing corrective surgery. Dr. Diffenbaugh's notation could lead a reasonable juror to conclude that Dr. Fry was negligent in delaying the plaintiff's follow-up treatment, and that his negligence caused the plaintiff's injuries. And, of course, the plaintiff is free to bring a separate malpractice suit against Dr. Fry. But Dr. Fry was an independent contractor, and as this Court has already held, the United States cannot be liable for his negligence. *See* R. 33 & 35.

Therefore, Dr. Diffenbaugh's single notation is not sufficient evidence to demonstrate that the alleged negligence of the USP Big Sandy employees caused the plaintiff's injuries. The

9

notation says nothing about the actions of the prison employees. As this Court recently said in a similar case, "[i]t is simply insufficient for [the plaintiff] to provide a stack of pages from [his] medical records [and] expect them to speak for themselves . . . ." *Hernandez v. United States*, No. 08-CV-195-KSF, 2009 WL 1586809, *6 (E.D. Ky. June 5, 2009). This single needle in a haystack of medical records does not satisfy Kentucky's expert evidence requirement.

On the other hand, the Court agrees with Judge Atkins that the defendant has introduced sufficient expert evidence, in the form of a declaration from Dr. Ramirez, establishing that none of the actions by the prison officials caused the plaintiff's injuries. *See* R. 50 at 7-8. In particular, Dr. Ramirez states that there is no medical evidence that placing the plaintiff in Administrative Detention or failing to provide him with Tylenol caused his injuries. Ramirez Decl. ¶ 13. The plaintiff was not left alone in Administrative Detention; he was, like all prisoners, under the watchful eye of prison staff at all times. *Id.* Dr. Ramirez also notes that Dr. Diffenbaugh's concern was with "Dr. Fry's lack of follow up, not . . . the USP Big Sandy's post operative treatment." *Id.* ¶ 16. Thus, the Court agrees with Judge Atkins that there is no genuine issue of material fact as to the essential element of causation.

Judge Atkins also correctly concluded that the "common knowledge" exception to the expert evidence requirement does not save the plaintiff's claim from summary judgment. *See* R. 50 at 8. Expert testimony is not required where "causation is so apparent that laymen with general knowledge would have no difficulty in recognizing it." *Jarboe*, 397 S.W.2d at 778. This is not such a case. It would not be apparent to laymen that the alleged negligence of the prison employees, including placing the plaintiff in administrative detention after his surgery and failing

to provide him with Tylenol, caused the plaintiff's injuries. Surgery is an inherently risky endeavor. Complications happen. The plaintiff's injuries could have been caused by any number of factors other than the actions of the USP Big Sandy employees, including possible malpractice by the doctors themselves. As such, to survive summary judgment, the plaintiff must "make a showing sufficient to establish" that the alleged negligence of the USP Big Sandy employees caused his injuries. *Celotex Corp.*, 477 U.S. at 322. Under Kentucky law—the governing standard under the FTCA—a sufficient showing of causation in this case requires expert evidence. The plaintiff failed to provide sufficient expert evidence. As such, the Court agrees with Judge Atkins that summary judgment for the defendant is appropriate. R. 50 at 8.

### III. The Plaintiff's Objections to Judge Atkins's R&R

The plaintiff makes several specific objections to Judge Atkins's R&R. *See* R. 51. None has merit. The plaintiff largely rehashes arguments that have been made, and dismissed, before. Therefore, the Court will confine its discussion to those objections that have not been previously addressed.

#### A. First Objection

First, the plaintiff contends that USP Big Sandy employees were negligent because they left him alone following surgery for an extended period of time and did not provide prescribed pain medication. R. 51 at 1-2. But, as previously discussed, the plaintiff does not provide any expert evidence to show that the alleged conduct caused his injuries. Because the "common knowledge" exception to the expert testimony requirement under Kentucky law does not apply, the plaintiff's first objection is overruled.

**B. Second Objection**

The plaintiff objects to Judge Atkins's statement of the facts. The plaintiff contends that Judge Atkins incorrectly stated that "Dr. Fry discovered the displaced IOL," noting that Dr. Fry's entry in the plaintiff's medical records only states: "IOL Appear Displaced." R. 51 at 4. Whatever may be the merits of this factual quibble, it has no impact on the merits of the plaintiff's case. Whether Dr. Fry actually discovered that the plaintiff's IOL was displaced, or only noted that it appeared to be displaced, has no bearing whatsoever on whether the alleged negligence of USP Big Sandy employees caused the plaintiff's injuries. Therefore, this objection has no merit.

**C. Third Objection**

The plaintiff objects to Judge Atkins's interpretation of the law on medical negligence claims and expert testimony. The plaintiff argues that the requirement of expert testimony is a rule of evidence, not substantive law, and therefore need not be applied in federal court. The plaintiff is incorrect. The FTCA directs the Court to apply the law of the state in which the alleged tort occurred. 28 U.S.C. § 1346(b). The Sixth Circuit has applied Kentucky's expert witness requirement in other FTCA cases arising in Kentucky. *See, e.g.*, *Vance*, 90 F.3d at 1148. Therefore, this Court must apply Kentucky's expert witness requirement.

The plaintiff also claims that language in a previous order of the Court implies that expert testimony is not required. He quotes the following sentence from the Court's order of May 13, 2009: "Clearly, the conduct he alleges could have contributed to his injuries, and in fact, Davis has submitted evidence that Dr. Diffenbaugh concluded that Davis's current condition was

12

caused by a delay in his post-surgical care." R. 51 at 5 (quoting R. 16 at 12). This single sentence, plucked out of context, does not save the plaintiff's claim. In the May 13, 2009, order, the Court was considering whether the plaintiff had provided adequate notice of his claim to the Bureau of Prisons, as required by 28 U.S.C. § 2675. The Court concluded that the plaintiff's allegations were sufficient to put the defendant on notice that he was seeking compensation for injuries caused both by Drs. Fry and Diffenbaugh and other prison employees. *See* R. 16 at 12-13. But that was then, and this is now. The question of whether the plaintiff adequately put the defendant on notice of his claims is very different from the question of whether the plaintiff has produced sufficient evidence to survive the defendant's motion for summary judgment. He has not. Therefore, this objection lacks merit.

D.     **Fourth Objection**

The plaintiff cites a Sixth Circuit case in support of the proposition that he was only required to produce "verifying medical evidence" to support his claim. R 51 at 8 (citing *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The plaintiff contends that the single notation by Dr. Diffenbaugh constitutes sufficient "verifying medical evidence." But that is not the standard in this case. *Napier* is inapposite because it was an Eighth Amendment case. *See id.* Federal courts apply federal law to Eighth Amendment claims. But the plaintiff's claims in this case arise under the FTCA, which requires the Court to apply Kentucky law—expert evidence requirement and all. Therefore, this objection lacks merit.

E.     **Fifth Objection**

Finally, the plaintiff argues that the defendant has failed to produce evidence showing that

the alleged negligence of the USP Big Sandy employees did not cause his injuries. R. 51 at 9. The plaintiff casts aspersions on two declarations offered by the defendant—those of Health Services Administrator Sherry Sloane and Dr. Rodriguez. *Id.* Whatever may be the merits of the plaintiff's criticisms of the defendant's evidence, it is really beside the point. Causation is an essential element of the *plaintiff's* claim, on which he bears the burden of proof even at this stage. No matter how this Court views the evidence, the plaintiff has not put forth any evidence as to causation, as required by Kentucky law. As such, summary judgment for the defendant is appropriate. *See Celotex Corp.*, 477 U.S. at 322.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** as follows:

(1) The plaintiff's Motion for Summary Judgment, R. 39, is **DENIED**.

(2) The defendant's Motion for Summary Judgment, R. 45, is **GRANTED.**

(3) Judge Atkins's recommended disposition, R. 50, is **ADOPTED**, and thus, Plaintiff's objections, R. 51, are **OVERRULED**.

(4) This matter shall be stricken from the Court's active docket.

This the 20th day of August, 2010.



Signed By:
*Amul R. Thapar* AT
United States District Judge